UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COAST TO COAST CLAIM SERVICES, INC., | |
| Plaintiff, | No. 21 C 04641 |
| v. | Judge Thomas M. Durkin |
| RAYMOND T. YAGELSKI AND BILLY MUSGROVE, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Coast to Coast Claim Services, Inc. ("Coast to Coast") brought this action against Defendants Raymond T. Yagelski ("Yagelski") and Billy Musgrove ("Musgrove"), alleging breach of fiduciary duty, conspiracy to breach fiduciary duty, and fraud for their refusal to turn over the source code for an app which Coast to Coast hired them to develop, and for their theft and use of Coast to Coast's technology. The Court entered a default against Yagelski on June 30, 2022. R. 64. Coast to Coast now moves for a default judgment under Fed. R. Civ. P. 54(b) and 55(b)(2) against Yagelski.[1] For the reasons stated herein, that motion is granted.

**Legal Standards**

Federal Rule of Civil Procedure 55 gives the Court the power to enter a judgment by default. Rule 55(a) states that the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed

---

[1] Musgrove has been voluntarily dismissed from this action. R. 66.

1

to plead or otherwise defend" itself. Entry of default under Rule 55(a) is not a final judgment, but a default judgment under Rule 55(b) is. *Tygris Asset Finance, Inc. v. Szollas*, 2010 WL 2266432, at *2 (N.D. Ill. June 7, 2010) (citing *United States v. Hansen*, 795 F.2d 35, 36 (7th Cir. 1986)). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint." *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

Upon default, the well-pleaded allegations in the complaint relating to liability are taken as true. *Dundee Cement*, 722 F.2d at 1323. However, the allegations related to damages are not. *Di Mucci*, 879 F.2d at 1497. The Court may conduct hearings when necessary to perform an accounting, ascertain damages, "establish the truth of any allegation by evidence," or "investigate any other matter." Fed. R. Civ. P. 55(b)(2)(A)–(D). A judgment by default may be entered without a hearing on damages if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement*, 722 F.2d at 1323.

## Background

### I. Factual History

Mr. Majdy Bader ("Bader"), the President and sole shareholder of Coast to Coast, conceived of mobile applications ("apps") which would provide a universal interface for insurance companies' claim reporting processes. R. 1 ¶ 1. In March 2021,

2

Mr. Bader hired Yagelski as a consultant to develop the apps. *Id.* at ¶¶ 19–21. Yagelski induced Coast to Coast to hire Musgrove to market and sell Coast to Coast's services and to pay Chinese third parties to write the source code and develop the apps. *Id.* at ¶¶ 22–23, 26–27, 30. But Yagelski never delivered an app. Among other wrongful acts, Yagelski refused to turn over to Coast to Coast the source code for any app and falsely claimed it as his own through an unregistered tradename, ClaimMate. *Id.* at ¶¶ 28–29, 46–48, 56. In mid-August, 2021, Yagelski resigned from Coast to Coast, and took the source code and technology with him. *Id.* at ¶¶ 47–49.

## II. Procedural History

On August 30, 2021, Coast to Coast brought this action seeking injunctive relief and damages. R. 1 at 77, 92, 107, 120, 133. On September 1, 2021, attorney Adam Urbanczyk filed an appearance on behalf of Yagelski and made arguments at a hearing on Coast to Coast's motion for a temporary restraining order ("TRO"). R. 12, 13. The Court entered the TRO. R. 13. Attorney Michael Davis also later filed an appearance for Yagelski. R. 26.

On November 2, 2021, Coast to Coast filed a motion for default judgment because Yagelski had failed to answer the complaint. R. 35. Coast to Coast also filed a motion to compel Yagelski to provide access to a GitHub account so Coast to Coast could access source codes that pre-dated Yagelski's employment. R. 34. The motion to compel also sought supplementation of Yagelski's deficient discovery responses and further responsive documents. *Id.* The Court granted the motion to compel, R. 47, and awarded Coast to Coast's attorney's fees, R. 55, but denied the motion for default

judgment, giving Yagelski 21 days to answer the Complaint. R. 38. After 21 days, Yagelski filed a motion to dismiss for failure to state a claim, R. 46, which the Court denied. R. 56. The Court ordered Yagelski to answer the Complaint and complete Rule 26 disclosures by June 7, 2022. R. 59. Yagelski did not comply. On June 7, 2022, Yagelski's counsel moved to withdraw, citing Yagelski's failure to pay them despite reasonable warnings. R. 61. The Court set a hearing on this motion and instructed Yagelski to personally participate. R. 62. Yagelski failed to appear, and the Court granted the motion to withdraw, warning that Yagelski would be defaulted if he failed to join the next status call. R. 63.

On June 30, 2022, the Court held the next telephonic status hearing, and Yagelski again failed to participate. R. 64. Because he did not appear and still had failed to answer the Complaint, the Court granted Coast to Coast's oral motion for entry of default against Yagelski and set a status hearing for September 16, 2022. *Id*. Yagelski participated in that status hearing, during which the Court set a briefing schedule for the instant motion for default judgment. R. 65. Yagelski filed a response to Coast to Coast's motion. R. 72. To this day, Yagelski has never controverted or otherwise answered the allegations in the Complaint.

## Analysis

### I. Default Judgment

A default judgment is easily justified in this case. During the fourteen months this case has been pending, Yagelski has failed to file any answer, affidavit, or other document refuting the allegations of the Complaint. Coast to Coast's allegations

4

remain uncontested. But that is not Yagelski's only omission. He has also failed to: complete Rule 26 Disclosures; provide access to the GitHub account and source codes despite a court order to do so; pay Coast to Coast's attorney's fees related to the motion to compel despite a court order to do so; participate in the hearing on his counsels' motion to withdraw despite this Court and his attorneys instructing him to do so; participate in the June 30, 2022 telephonic status hearing despite warnings that his case would be defaulted if he didn't appear; and provide a meaningful response to the motion at issue. It appears, then, that Yagelski has "willfully chosen not to conduct [this] litigation with the degree of diligence and expediency" expected of litigants. *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984) (upholding trial court's refusal to grant relief from default judgment where it appeared that defaulting party was willful in his refusal to diligently conduct litigation).

Yagelski's response to the instant motion contains no explanation for his failures. His brief appears to be copied from another case, does not address any of Plaintiff's arguments, provides no meaningful explanation for his refusal to participate, and cites inapplicable Illinois state procedural law. R. 72. The only explanation Yagelski offers for his conduct is that he "missed two consecutive court dates due to unavoidable circumstances and . . . the lawyers had withdrawn without prior disengagement letters." R. 72 at ¶ 2. He provides no description of what those unavoidable circumstances are. Further, his attorneys had attempted to withdraw twice with plenty of prior notice. R. 40, 61. There is thus no indication that Yagelski's

5

consistent refusal to participate in the case or respond to court orders is a result of "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), nor that there is "good cause" for his failures. Fed. R. Civ. P. 55(c).[2] While it is true that Yagelski is currently acting as a pro se litigant, this Court has constantly admonished Yagelski regarding his duties and warned him of the consequences of his continued conduct. Thus, the Court will grant Coast to Coast's motion for a default judgment against Yagelski under Rule 55(b).

## II. Damages

The next inquiry is whether the Court should award the damages requested by Coast to Coast. Coast to Coast seeks $133,182.78 in compensatory damages, $133,182.78 in punitive damages, and equitable relief in the form of a permanent injunction. The Court will grant the $133,182.78 in compensatory damages and the permanent injunction against Yagelski but declines to grant punitive damages.

### a. Compensatory Damages

Coast to Coast is entitled to damages that equal the "entire amount of the loss occasioned by [the defendant's] acts." *Int'l Cap. Corp. v. Moyer*, 347 Ill. App. 3d 116, 126, 806 N.E.2d 1166, 1174 (1st Dist. 2004) (discussing damages available for breach of fiduciary duty). This includes the complete forfeiture of any salary paid by Coast to Coast to Yagelski, its fiduciary, when he was breaching his duty to it. *See Dowd*

---

[2] Courts often consider Rules 55(c) and 60(b) together in determining whether to grant a judgment by default. This is because it would be "inefficient" for the court to grant a default judgment "knowing that such judgment would be promptly set aside" pursuant to Rules 55(c) or 60(b). *Macri v. Yamauchi,* No. 01 C 50168, 2002 WL 390223, at *4 (N.D. Ill. Mar. 11, 2002).

*and Dowd Ltd. v. Gleason*, 347 Ill. App. 3d 116, 126, 816 N.E.2d 754, 771 (1st Dist. 2004). As to fraud, damages that give Coast to Coast the benefit of its bargain are proper. *See* Restatement (Second) of Torts § 549 (1977). Finally, conspiracy extends liability for any tortious acts committed by Musgrove and the Chinese developers to Yagelski, who knowingly planned, assisted, or encouraged the acts. *See Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62, 645 N.E.2d 888, 894 (1994).

The amount Coast to Coast seeks in compensatory damages is equal to the sum of Coast to Coast's payments to Yagelski and the Chinese developers and a portion of the salaries of two Coast to Coast employees who reported directly to Yagelski to work on the apps. R. 69-1 at 71–72. The payments to Yagelski, the Chinese developers, and the two employees are a fair accounting of the loss occasioned by Coast to Coast from Yagelski's wrongful conduct. Coast to Coast alleges it paid Yagelski with the expectation it would be receiving a working app and/or source code, but it received neither. Instead, Yagelski took the source code developed using Coast to Coast's resources and marketed it under his own tradename, ClaimMate. Evidence also shows that Yagelski fraudulently induced Coast to Coast to pay the Chinese developers an amount well above asking price, and then split the difference with them. See R. 69-1 at 80–81 (Yagelski: "Well I have him interested in paying $6,000/week instead of $2,000 like you asked for." Chinese developer: "Yes, and?" Yagelski: "Do we split the other $4,000?" Chinese developer: "Yes.").

Coast to Coast's compensatory damages calculation is supported by Mr. Bader's declaration and a chart prepared by Coast to Coast's accountants listing all

7

payments to Yagelski and the Chinese developers. The chart details each payment amount, payment date, check number, and the name of the recipient's account. *Id.* at 69–75. It then adds 50% of the salaries of the two Coast to Coast employees who assisted with the development of the apps during Yagelski's tenure. Mr. Bader's declaration explains that the employees spent roughly 80% of their time assisting Yagelski, and that the 50% figure is meant to be a conservative estimate. *Id.* at 69–70. Because "the amount claimed is . . . capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," *Dundee Cement*, 722 F.2d at 1323, this Court will award compensatory damages to Coast to Coast in the requested amount of $133,182.78, with post-judgment interest to accrue.

### b. Punitive Damages

On the other hand, punitive damages are inappropriate in this case. Even though Illinois law supports the award of punitive damages for fraudulent conduct, "punitive damages based on a default judgment appear to be the exception rather than the rule in the Seventh Circuit." *Dvore v. Casmay*, No. 06-CV-3076, 2009 WL 211856, at *6 (N.D. Ill. Jan. 29, 2009); *see also Cap. One Auto Fin., Inc. v. Orland Motors, Inc.*, No. 09-CV-4731, 2012 WL 3777025, at *7 (N.D. Ill. Aug. 27, 2012) (declining to award punitive damages for default judgment where there were allegations of fraudulent conduct); *Blumenthal v. Anselmo*, No. 07-C-7230, 2009 WL 1940760, at *3 (N.D. Ill. July 3, 2009) (same). Indeed, the "purpose behind default judgments . . . is to allow district courts to manage their dockets efficiently and effectively," and not to punish parties. *Merrill Lynch Mortg. Corp. v. Narayan*, 908

F.2d 246, 253 (7th Cir. 1990) (vacating award of punitive damages on default judgment because it was "in excess of what is required."). So, though Coast to Coast alleges fraud here, this Court is bound by the Seventh Circuit's disinclination to grant punitive damages on default judgment.

### c. Equitable Relief

Coast to Coast also seeks equitable relief in the form of a permanent injunction restraining Yagelski from:

> (1) continuing to use property of Coast to Coast, (2) refusing to immediately turn over any Coast to Coast property to Coast to Coast, (3) soliciting customers or prospective customers of Coast to Coast, or assisting any third party in doing so, (4) using any confidential or proprietary information belonging to Coast to Coast including information given by Coast to Coast to suppliers and vendor[s], and (5) selling, transferring, or otherwise sharing with any other person products identified in the Verified Complaint, ¶25, to-wit: Report App, Camera App, CRM, Inspector App and Adjustor App.

R. 69 at 19.

Even where judgment is by default and the defendant has failed to object to the equitable relief sought by the plaintiff, the court must still make a "substantial inquiry" into the necessity of such relief. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604–05 (7th Cir. 2007); Fed. R. Civ. P. 65(d) ("Every order granting an injunction . . . shall set forth the reasons for its issuance . . . ."). According to the Supreme Court:

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that

the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In short, Coast to Coast bears the burden to show that its "case is abnormal" and "damages are inadequate." *Walgreen Co. v. Sara Creek Property Co., B.V.*, 966 F.2d 273, 275 (7th Cir. 1992) (holding that default judgment alone could not support the entry of a permanent injunction).

First, Coast to Coast has shown that it has suffered and continues to suffer an irreparable injury. Yagelski continues to refuse to turn over access to GitHub so that Coast to Coast can access its source codes that both pre-date and post-date Yagelski's employment, despite being ordered to do so by this Court. Yagelski also apparently continues to advertise Coast to Coast's technology on his own website, ClaimMate.com,[3] notwithstanding the existence of this lawsuit. Despite his earlier statements to the Court that he developed the ClaimMate technology on his own, the chat record produced by Yagelski shows that he had no technological ability to build his own apps apart from Coast to Coast's resources. See R. 69-1 at 85 (Yagelski: "Plz understand that I do not know programming or coding at all. So I have to ask extra questions[.]").

Collectively, this not only demonstrates Coast to Coast's continuing harm, but that monetary damages are likely to be inadequate to compensate for the harm. Yagelski has shown that he will continue to use Coast to Coast's technology and market it as his own unless enjoined. Further, Yagelski's apparent inability to pay

---

[3] ClaimMate Suite, https://www.claimmate.com/ (last visited Oct. 28, 2022).

his attorneys shows that he will likely be unable to pay the monetary damages. *See, e.g.*, *Meek v. Archibald & Meek, Inc.*, No. 21-CV-02397, 2021 WL 2036535, at *5 (N.D. Ill. May 21, 2021) (considering the defendant's ability to pay monetary damages in determining whether to grant injunctive relief).

On balance, a remedy in equity is warranted. Yagelski "should not consider it a burden to follow the law." *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 640 (N.D. Ill. 2016) (citing *Miyano Mach., USA, Inc. v. MiyanoHitec Mach, Inc.*, 576 F.Supp.2d 868, 888 (N.D. Ill. 2008) ("In assessing any irreparable harm [the defendant] may suffer, this Court excludes any burden it voluntarily assumed by proceeding in the face of a known risk.") (cleaned up)). Yagelski here chose to ignore this Court's orders by refusing to give Coast to Coast access to its own property contained in the GitHub account. He also voluntarily chooses to continue marketing ClaimMate online despite this lawsuit.

Finally, an injunction is not contrary to the public interest. In fact, the "public interest lies in favor of upholding property interests . . . and preventing customer confusion." *MetroPCS*, 215 F. Supp. 3d at 640 (granting permanent injunction in default judgment case where the defendants stole and re-sold MetroPCS headsets and infringed its trademarks). An injunction which prohibits Yagelski from using, marketing, and refusing to turn over Coast to Coast property would serve that public interest.

Thus, the Court will enter a permanent injunction in the form requested by Coast to Coast, with the exception of the third provision (enjoining Yagelski from

"soliciting customers or prospective customers of Coast to Coast, or assisting any third party in doing so"). The Court does not think a broad, permanent injunction against any and all solicitation of both current and "prospective" customers is necessary. There is no indication that Yagelski ever signed a non-competition or non-solicitation agreement with Coast to Coast. And, if the Court enjoins Yagelski with the broad language requested by Coast to Coast, Yagelski would likely be forever unable to work in the insurance industry in general. In the interest of fashioning a remedy tailored to Coast to Coast's injury—here, Yagelski's theft and use of Coast to Coast's technology—the Court will narrow the requested injunction by excluding the non-solicitation clause. *See, e.g.*, *Turnell v. CentiMark Corp.*, 796 F.3d 656, 665 (7th Cir. 2015) (finding that injunction prohibiting solicitation of "prospective customers" was too broad because it was vague and contained no geographic limitation).

## Conclusion

Coast to Coast's motion for default judgment (R. 68) is granted, and final judgment is hereby entered against Defendant Raymond T. Yagelski and in favor of Plaintiff Coast to Coast Claim Services, Inc., on all the claims set forth in the Complaint, in the amount of $133,182.78, which shall bear post-judgment interest. The Court finds no just reason for delay of entry of judgment. Fed. R. Civ. P. 54(b).

Furthermore, Defendant Yagelski and all of his past and present agents, officers, directors, successors, assigns, parents, subsidiaries, affiliates, companies, predecessors-in-interest, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for him or on

his behalf, and any and all persons and entities in active concert and participation with Defendant Yagelski who receive notice of this Order, shall be and hereby are permanently enjoined from: (1) continuing to use property of Coast to Coast, (2) refusing to immediately turn over any Coast to Coast property to Coast to Coast, (3) using any confidential or proprietary information belonging to Coast to Coast, including information given by Coast to Coast to suppliers and vendor[s], and (4) selling, transferring, or otherwise sharing with any other person products identified in the Complaint, ¶25, to-wit: Report App, Camera App, CRM, Inspector App and Adjustor App.

Defendant Yagelski and those persons or entities acting in active concert with him who receive actual notice of this order by personal service or otherwise are warned that any act by them in violation of any of the terms of this Order may be considered and prosecuted as contempt of this Court.

The Clerk is hereby directed to release to Coast to Coast its $1,000 bond.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: October 31, 2022